UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
LEAH COLUCCI,

     *Plaintiff*,

  v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

     *Defendant*.
--------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

19-cv-01412 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

     Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Leah Colucci ("plaintiff") appeals the final decision of the Acting Commissioner of Social Security ("defendant"), which found that plaintiff was not eligible for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and that plaintiff was not eligible for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, on the basis that plaintiff is not disabled within the meaning of the Act.  Plaintiff alleges that she is disabled under the Act and is thus entitled to receive the aforementioned benefits. Plaintiff is alleging disability since December 1, 2014.  (ECF No. 25, Administrative Transcript ("Tr.") at 13.)

     Presently before the court is plaintiff's motion for judgment on the pleadings,(ECF No. 21, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the

Pleadings ("Pl. Mem.")), defendant's cross-motion for judgment
on the pleadings and in opposition to plaintiff's motion for
judgment on the pleadings, (ECF No. 23, Defendant's Memorandum
of Law in Support of Defendant's Motion for Judgment on the
Pleadings and in Opposition to Plaintiff's Motion for Judgment
on the Pleadings ("Def. Mem.")), and plaintiff's reply
memorandum of law in support of plaintiff's motion for judgment
on the pleadings (ECF No. 24, ("Pl. Reply").)  For the reasons
stated below, plaintiff's motion is GRANTED, defendant's motion
is DENIED, and the case is remanded for further proceedings
consistent with this Memorandum and Order.

<u>**BACKGROUND**</u>

        The parties have submitted a joint stipulation of
facts detailing plaintiff's medical history and the
administrative hearing testimony, which the court incorporates
by reference.  (*See generally* ECF No. 24-1, Joint Stipulation of
Facts ("Stip.").)  On August 17, 2015 the plaintiff filed
applications for DIB and SSI Benefits.  (Tr. at 13.)  The
plaintiff claimed she was disabled as a result of her
alcoholism, paranoia, depression, anxiety, and bipolar disorder.
(*Id.* at 251.)  Ms. Colucci's alleged disability onset date was
December 1, 2014.  (*Id.* at 13.)  Plaintiff's application was
denied on November 30, 2015. (*Id.*)

On December 17, 2015 plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 96.) On October 3, 2017, ALJ Dina R. Loewy held a video hearing from Jersey City, during which plaintiff appeared in Staten Island and was represented by an attorney. (*Id.* at 13.) Plaintiff and a vocational expert {"VE"} testified at the hearing. (*Id.* at 37.) VE testified that plaintiff retained the ability to perform work at all levels of exertion, with certain limitations. (*Id.* at 68-72.) During the hearing, the ALJ requested that plaintiff's attorney produce plaintiff's medical records from Dr. Agnie, Dr. Greenspan, Dr. Gomez and Ms. Reuben (plaintiff's therapist at the time of the hearing) within 30 days. (Tr. at 59, 74.) The ALJ also preemptively requested that plaintiff sign an 827 form[1] but the ALJ did not state that she would obtain any records herself. (*Id.* at 59-60.)

On October 23, 2017, plaintiff's attorney provided the ALJ with plaintiff's medical records from Dr. Agnie and Ms. Reuben. (*Id.* at 338.) Plaintiff's attorney also advised the ALJ that no further records were required for Dr. Greenspan, and that plaintiff's attorney was waiting to receive records from Dr. Gomez. (*Id.*)

---

[1] The ALJ asked plaintiff to sign an 827 form "just so that [she could] have it available". (*Id.* at 60.)

3

In a decision dated January 31, 2018, the ALJ found plaintiff was not disabled. (*Id.* at 10.)  On March 26, 2018, plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 217-24.)  On November 6, 2018, the Appeals Council granted plaintiff's request for a 25-day extension to provide additional information before the Council acted on plaintiff's case. (*Id.* at 6-7.)  On January 7, 2019, the Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3.)

On March 12, 2019, plaintiff filed the instant action in federal court. (*See generally* ECF No. 1, Complaint ("Compl.").)  Plaintiff retained new counsel to represent her in the instant action. (*Id.*)  On March 13, 2019, this court issued a scheduling order. (ECF No. 5, Scheduling Order.)  Plaintiff requested and was granted three requests for an extension of the schedulings. (ECF Nos. 9, 10, 11; Dkt. Orders dated 8/7/2019, 9/9/2019, 9/27/2019.)

Defendant also filed four motions for an extension of time to file the Commissioner's cross-motion. (ECF Nos. 13, 14, 15, 16.)  The court granted the defendant's motions for extensions. (Dkt. Orders dated 11/8/2019, 12/13/2019, 1/14/2020, 2/25/2020.)

On May 4, 2020, plaintiff filed a motion for extension of time to file her reply memorandum. (ECF No. 18, Letter

4

Motion for Extension of Time to File.)  On May 5, 2020, the court granted plaintiff's motion.  (Dkt. Order dated 5/5/2020.)

On May 27, 2020, plaintiff filed her notice of motion and memorandum of law in support of plaintiff's motion for judgment on the pleadings.  (ECF Nos. 20 and 21.)  On that same day, defendant filed his cross-motion and memorandum of law in support of defendant's cross-motion for judgment on the pleadings and in opposition of plaintiff's motion for judgment on the pleadings.  (ECF Nos. 22 and 23.)  Later that same day, plaintiff filed her reply memorandum of law.  (ECF No. 24.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by

5

substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

6

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

### I. The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since December 1, 2014, the alleged onset date of her disabilities. (Tr. at 15.)

At step two, the ALJ found that plaintiff suffered from severe impairments of a history of alcohol abuse, seizure

disorder, bipolar disorder, panic disorder, anxiety disorder, and schizoaffective disorder, bipolar type. (*Id.*) The ALJ found that plaintiff's medically determinable impairments significantly limited claimant's ability to perform basic work activities. (*Id.*)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals Medical Listing 11.02 (epilepsy), Medical Listing 12.03 (schizophrenic, paranoid, and other psychotic disorders), or Medical Listing 12.04 (depressive, bipolar and related disorders). (*Id.* at 16; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926.) Specifically, the criteria set forth in paragraph B of Medical Listings 12.03 and 12.04 were not satisfied because the ALJ found that plaintiff had moderate (not marked) limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. (*Id.* at 16-17.) In making this determination, the ALJ referenced, *inter alia*, plaintiff's consultative examination with Dr. Quarles on June 9, 2017(Exhibit 21F) and plaintiff's mental status examinations from Richmond University Medical Center ("RUMC") dated 4/11/2017 to 6/8/2017 (Exhibit 20F) and 8/7/2017 (Exhibit 22F). (*Id.* at 16-17.) Additionally, the ALJ found that the criteria set forth

in paragraph C of Medical Listings 12.03 and 12.04 were not
satisfied based on the evidence in the record. (*Id.* at 17.)

At step four, the ALJ found that plaintiff had the
Residual Functional Capacity ("RFC") to perform a full range of
work at all exertional levels but with the following
nonexertional limitations: (1) the need to avoid all exposure to
hazardous machinery, unprotected heights, and operational
control of moving machinery; (2) the ability to perform only
simple unskilled work (as defined in 20 C.F.R. 404.1568(a)); (3)
the ability to perform only low stress work, defined as having
only occasional decision making and changes in the work setting;
(4) the inability to have a production rate requirement or fast
paced production requirements; (5) the inability to have any
interaction with the public including by telephone; and (6) the
ability to have only occasional interaction with coworkers or
supervisors.  (*Id.* at 17.)

The ALJ concluded that although plaintiff's medically
determinable impairments could reasonably be expected to cause
the alleged symptoms, plaintiff's statements concerning the
intensity, persistence, and limiting effects of these symptoms
were not entirely consistent with the medical evidence and other
evidence in the record.  (*Id.* at 18.)  The ALJ compared
plaintiff's testimony to plaintiff's medical records and
determined that plaintiff generally functions well when not

11

using alcohol.  (*Id.* at 20.)  The ALJ concluded that plaintiff was unable to perform any past relevant work as a receptionist, which consists of semiskilled sedentary work.  (*Id.* at 21.)

At step five, the ALJ found that, based on plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).  (*Id.*)  The vocational expert testified that plaintiff would be able to perform the requirements of representative occupations such as hand packager, store laborer, and laundry worker.  (*Id.* at 22.)  Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 404.1520(f) and 20 C.F.R. § 416.920(f), since December 1, 2014, through the date of the hearing.  (*Id.*)

## II. Development of the Record

Plaintiff argues that the ALJ failed to fulfill her duty to develop the record because the ALJ made no efforts to obtain treatment records from plaintiff's treating psychiatrist Dr. Gomez and therapist Michele Rubin at RUMC.  (Pl. Mem. at 1.) The ALJ requested these records during the administrative hearing, but because neither plaintiff's attorney nor the ALJ obtained them, they were never added to the record.  Plaintiff argues that because the ALJ did not independently obtain the

records at issue, the ALJ failed to develop the administrative record and thus remand for a new hearing is proper.  (Pl. Memo. at 20.)

In response, the Commissioner argues that the ALJ properly developed the record after plaintiff submitted additional medical records from RUMC and from Ms. Rubin.  (Def. Mem. at 9-11.)  The Commissioner also notes that the ALJ relied on a complete medical history, without need to consider medical source statements, in determining that plaintiff was not disabled.  (*Id.* at 12.)

Generally, even if a plaintiff is represented, an ALJ has an "'affirmative duty to develop the administrative record.'"  *Anderson v. Astrue*, 07-CV-4969, 2009 WL 2824584, at *12 (E.D.N.Y. Aug.28, 2009) (quoting *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999)).  Pursuant to 20 C.F.R. §§ 404.1512(e) and 416.912(e), when the evidence received from a claimant's treating physician, psychologist, or other medical source is inadequate to determine whether the claimant is disabled, the ALJ has an obligation to seek additional information to supplement the record.  *Mantovani v. Astrue*, No. 09-CV-3957, 2011 WL 1304148, at *3 (E.D.N.Y. Mar.31, 2011).  The ALJ bears this duty whether or not a claimant appears with representation.  *Batista v. Banhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004).  The duty does not arise, however, where there are no obvious gaps in

13

the administrative record and where the ALJ already possesses a "complete medical history." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).

Nevertheless, the ALJ must seek additional evidence or clarification when a report from a medical source contains a conflict or ambiguity, lacks necessary information, or is not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1512(e), 416.912(e).  In assembling a complete record, the SSA must "make every reasonable effort" to "get medical reports from [plaintiff's] medical sources." 20 C.F.R. §§ 404.1512(d), 416.912(d).  "Every reasonable effort" means making "an initial request for evidence from [plaintiff's] medical source[s]," and, if no response has been received, "one follow-up request." 20 C.F.R. §§ 404.1512(d)(1), 416. 912(d)(1).

Although the Administrative Record is voluminous and contains evaluations from a multiple doctors and records from RUMC, the record does not contain records from plaintiff's treating psychiatrist Dr. Gomez and therapist Ms. Rubin.  The ALJ was on notice that plaintiff received regular treatment from Dr. Gomez and Ms. Rubin for about a year prior to the October 3, 2017 hearing.  (Tr. at 48-49.)  Indeed, during Plaintiff's hearing, the ALJ noted that, "I don't have records for Dr. Gomez and [Ms.] Reuben. [Plaintiff's] been going there since January,

14

I don't have those records.  (Tr. at 57.)  At the hearing, the
ALJ specifically referenced Exhibit 20F, stating, "Exhibit 20F
is a letter from [Ms. Rubin], and it's got no treatment
records."  (Tr. at 55.)[1]

After the hearing was concluded, plaintiff's attorney
did provide the ALJ with additional medical records.  (*Id.* at
338.)  On October 23, 2017, plaintiff's attorney re-submitted
portions of Exhibit 20F but included only the aforementioned
letter from Ms. Rubin, as well as a list of plaintiff's
medications dated 10/6/17.  (*Id.* at 338, 947-48.)

When re-submitting these records, plaintiff's attorney
also represented to the ALJ that the records from Dr. Gomez were
forthcoming, but the records were never submitted.  (*Id.* at
338.)  The records from Dr. Gomez, plaintiff's treating
psychiatrist at the time of the hearing, undoubtedly are
relevant to the ALJ's determination regarding plaintiff's
ability to work.  The references to Dr. Gomez by plaintiff
during her testimony, as well as her medical records, triggered
an obligation for the ALJ to further develop the record.  *See
Umansky v. Apfel*, 7 F. App'x 124, 127 (2d Cir. 2001) (finding

---

[1] After reviewing the Administrative Transcript and Exhibit 20F, it appears as
though the letter referenced by the ALJ is actually just the first page of a
23-page document that contains medical records which should have been
considered.  The hearing transcript, the ALJ's decision, and plaintiff's memo
only reference the 1-page letter in Exhibit 20F.  On remand, the ALJ should
specifically review the entirety of Exhibit 20F in addition to the 1-page
letter and discuss the records in the context of the disability
determination.

15

that "the ALJ did not adequately fulfill his obligation to develop the record" where other medical records regarding RFC were available); *Corona v. Berryhill*, No. 15-CV-07117, 2017 WL 1133341, at *16 (E.D.N.Y. Mar. 24, 2017) (finding ALJ did not satisfy duty to develop record where ALJ took no action to ensure record was complete beyond discussing missing treatment notes with counsel on record and leaving record open for submission of records); *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-06704, 2015 WL 321832, at *21 (S.D.N.Y. Jan. 23, 2015) ("The ALJ did not fulfill his duty to develop [Plaintiff's] record. First, the ALJ did not attempt to procure the pertinent medical records that very likely exist but are missing from the administrative record."). Yet, there is no evidence that the ALJ attempted to obtain any records from Dr. Gomez after specifically requesting them from plaintiff's attorney during the hearing.

The Commissioner contends that the ALJ fulfilled her duty to develop the record because plaintiff's attorney failed to express any difficulty in obtaining records from Dr. Gomez and should have requested the ALJ's assistance in obtaining these records. (Def. Mem. at 10.) The present case can be distinguished from the cases the Commissioner uses to support this conclusion. (*Id.*) Here, there is no evidence that the ALJ sent a reminder to plaintiff's attorney. *See Jordan v.*

*Commissioner of Social Security*, 142 F. App'x 542, 543 (2d Cir. 2005).  Nor is there evidence that the ALJ made any attempts to assist plaintiff's attorney.  *See Voyton v. Berryhill*, 2019 WL No. 6:17- CV-06858-MAT, 2019 WL 1283819, at *3 (W.D.N.Y. Mar. 20, 2019).  There is likewise no evidence that the ALJ contacted the treating sources directly or otherwise made any reasonable efforts to obtain the records.

The Commissioner also asserts that the ALJ had no duty to obtain records that may not exist.  (Def. Mem. at 10.)  Here, the ALJ was aware that plaintiff regularly received treatment from Dr. Gomez and Ms. Rubin for about a year; thus, the medical records from these sources certainly exist.

The Commissioner further contends that because the record contains treatment reports from RUMC from 2017, the record is consistent and sufficient to determine whether plaintiff is disabled.  (Def. Mem. at 11.)  The treatment reports from 2017, however, are inconsistent with plaintiff's testimony and with plaintiff's consultative examination by Dr. Quarles on June 9, 2017.  (Tr. at 20.)  In her decision, the ALJ states that more weight was assigned to state agency medical consultant Dr. Shapiro's 2015 evaluation of plaintiff because it was consistent with 2017 RUMC records, which indicated that plaintiff generally functions well without alcohol.  (Tr. at 20.)  The ALJ assigned "little weight" to plaintiff's

17

consultative examination by Dr. Quarles on June 9, 2017 because it was inconsistent with the RUMC records.  (*Id.*)  Given these inconsistencies, and without the treating source records from Dr. Gomez and Ms. Rubin from 2017, the ALJ failed to fulfill her duty to develop the record.

This case is remanded for the reasons provided above. Moreover, the ALJ should have obtained medical source statements from Dr. Gomez and Ms. Rubin to resolve inconsistencies or insufficiencies in the record.  (Pl. Mem. at 23-25.) Accordingly, the ALJ should consider these medical source statements upon remand.  Specifically, upon reviewing the medical source statements from Dr. Gomez and Ms. Rubin, the ALJ should consider the *Burgess* factors, such as the length, frequency, nature or extent of plaintiff's relationship with both of these mental health professionals.  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *Rasin v. Comm'r of Soc. Sec.*, No. 18CV06605KAMLB, 2020 WL 3960516, at 14 (E.D.N.Y. July 13, 2020).  When the ALJ considers the length of the treatment relationship and frequency of the examination, she should also take into account the "evidence supporting its satisfaction" where the claimed impairments include: "depression, bipolar disorder, panic disorder, and generalized anxiety disorder," as appears to be the case here.  *Abate v.*

*Comm'r of Soc. Sec.*, No. 18-CV-2040 (JS), 2020 WL 2113322, at *1 (E.D.N.Y. May 4, 2020).

"[D]istrict courts within this Circuit have routinely recognized that ALJs have an affirmative duty to request medical source statements from a plaintiff's treating sources in order to develop the record, regardless of whether a plaintiff's medical record otherwise appears complete." *Battaglia v. Astute*, No. 11-CV-2045 (BMC), 2012 WL 1940851, at *7 (E.D.N.Y. May 25, 2012). "[T]he ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Lazo-Espinoza v. Astrue*, 10-CV-2089 (DLI), 2012 WL 1031417, at *13 (E.D.N.Y. Mar. 27, 2012).

As the ALJ in the present case did not request a medical source statement from Dr. Gomez or Ms. Rubin, who both regularly treated plaintiff at the time of the hearing, the ALJ reached a disability determination on an incomplete record.

## CONCLUSION

The Commissioner's finding that plaintiff was not disabled as defined by the SSA was not supported by substantial evidence in the record because the ALJ failed to fulfill her duty to develop the record. Accordingly, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED

19

for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff.

**SO ORDERED.**

DATED: March 31, 2021
      Brooklyn, New York

                                  /s/
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge